IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAYMOND CASTILLO,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CITY OF OAKLAND *et al.*,<br><br>　　　　Defendants.<br>　　　　　　　　　　　　　　　／ | No. C 09-4679 SI<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |

Plaintiff's motion for partial summary judgment is scheduled for a hearing on November 5, 2010. Pursuant to Civil Local Rule 7-1(b), the Court determines that the matter is appropriate for resolution without oral argument, and VACATES the hearing. For the reasons set forth below, the Court finds that there are numerous disputed issues of fact and accordingly DENIES plaintiff's motion.

**BACKGROUND**

Plaintiff Raymond Castillo filed this action alleging federal and state civil rights claims arising out of an incident that occurred on the evening of August 8, 2008 at an Oakland Raiders-San Francisco 49ers game at the Oakland Coliseum. Plaintiff attended the game with his brother and a group of friends; plaintiff and his friends are 49ers fans and they were all wearing 49ers clothing and colors. Plaintiff and his friends sat in Section 124 near the end zone, where they were surrounded by Raiders fans. It is undisputed that during the fourth quarter of the game, multiple altercations broke out, including fights in Section 124. Plaintiff alleges that numerous Raiders fans swarmed and jumped on him and his friends, and that plaintiff tried to push through the crowd to avoid being further hit.

Defendant Oakland Police Officer Bryant Ocampo responded to a dispatcher's call regarding

the fights in Section 124. The parties dispute much about what happened after Ocampo arrived in Section 124. According to Ocampo, he saw a Coliseum security officer pull plaintiff out of the fight, hold plaintiff down, and bend plaintiff over a chair while holding one of plaintiff's hands behind his back. At his deposition, Ocampo testified that the security officer told him that plaintiff had been involved in the fight, and based on that information, Ocampo decided to detain plaintiff to determine what had happened and whether plaintiff had committed battery in violation of Cal. Penal Code § 242.

Plaintiff claims that Ocampo used a high level of force to restrain and handcuff him, including using a "chopping" movement to the back of his left elbow. Plaintiff alleges that as a result of Ocampo's use of force, his elbow was broken. Ocampo denies using force on plaintiff, and states that he only tried to handcuff plaintiff and put his hands together. The parties also dispute whether plaintiff resisted being handcuffed. It is undisputed that after plaintiff was handcuffed, Ocampo brought plaintiff to the outside of "D Gate," the closest main entrance to Section 124, where Ocampo made plaintiff sit on the ground with the other 49ers fans who had been arrested and/or detained that evening. Oakland Police Department officers and Alameda County Sheriff's deputies stood in front of the detained individuals to create a barrier between them and the Raiders fans who were exiting the stadium, some of whom were attempting to attack the detainees.

According to Ocampo, after he brought plaintiff to D Gate, another commotion happened right behind him involving a woman who was in imminent danger, and he left to respond to that incident. Ocampo describes the atmosphere as "riot-like." Ocampo did not return to question plaintiff about whether he had in fact been involved in the fight in Section 124. Plaintiff claims that he was detained outside D Gate for over an hour, and that the entire time he was in extreme pain because of his injured elbow. At some point a medic examined plaintiff's arm, and he was subsequently taken by ambulance to a hospital where he was treated for "acute elbow sprain." Haddad Decl. Ex. F at 6 (medical records).[1] Plaintiff was not formally arrested or cited for any crime, although OPD reports state that plaintiff was

---

[1] The parties dispute how to interpret the medical records submitted by plaintiff, with plaintiff asserting that the records show that his elbow was "broken," and defendants arguing that the records do not support such an interpretation.

2

arrested for public intoxication.[2]

Plaintiff filed this lawsuit against Ocampo, the City of Oakland, the Oakland Police Department, and Does 1-10. Count One of the complaint alleges a claim against Ocampo and the Doe defendants under 42 U.S.C. § 1983 for violation of plaintiff's rights under the Fourth and Fourteenth Amendments to be free from unreasonable searches and seizures (false arrest), and to be free from excessive and unreasonable force in the course of arrest or detention. Count One also alleges a claim under § 1983 for violation of plaintiff's rights under the First and Fourteenth Amendments to be free from retaliation for exercise of rights, speech and expression. Count Two of the complaint alleges a § 1983 claim against the City of Oakland, the Oakland Police Department, and the Doe defendants based on supervisory and municipal liability. The complaint also alleges state law claims for violations for Cal. Civ. Code § 52.1, Cal. Civ. Code § 51.7, negligence, assault and battery, and false arrest and imprisonment.

Plaintiff's motion for partial summary judgment is directed at his § 1983 claim for unreasonable search and seizure (false arrest) and his claim under Cal. Civ. Code § 52.1.

**LEGAL STANDARD**

Summary adjudication is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

In a motion for summary judgment, "[if] the moving party for summary judgment meets its initial burden of identifying for the court those portions of the materials on file that it believes demonstrate the absence of any genuine issues of material fact, the burden of production then shifts so that the non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial." *See T.W. Elec. Service, Inc., v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). In

---

[2] It is unclear from the record why the OPD report states that plaintiff was arrested when in fact plaintiff was not arrested.

3

judging evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, and draws all inferences in the light most favorable to the non-moving party. *See T.W. Electric*, 809 F.2d at 630-31 (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)); *Ting v. United States*, 927 F.2d 1504, 1509 (9th Cir. 1991). The evidence presented by the parties must be admissible. Fed. R. Civ. P. 56(e). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

**DISCUSSION**

**I.   § 1983 false arrest claim**

Plaintiff alleges that when Officer Ocampo handcuffed and detained him, he was unlawfully arrested because there was no probable cause for an arrest. The Fourth Amendment requires that an arrest be supported by probable cause. *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001); *Michigan v. Summers*, 452 U.S. 692, 700 (1981) (an arrest is unlawful unless there is probable cause to support it). An "arrest" has occurred "if a reasonable person would conclude that he was not free to leave after brief questioning." *Stevens v. Rose*, 298 F.3d 880, 883 (9th Cir. 2002) (quotations omitted). In determining whether there has been arrest, a court must look at the totality of the circumstances, including the intrusiveness of the stop and whether the degree of intrusion was justified by, *inter alia*, legitimate officer safety concerns. *Id*. at 883-84. Plaintiff argues that Officer Ocampo arrested him because, *inter alia*, Ocampo had no basis to suspect plaintiff of criminal activity, Ocampo handcuffed him and used a high level of force against him resulting in a broken elbow, and plaintiff was detained for approximately an hour before an ambulance arrived and he was free to leave. Plaintiff also asserts that he was arrested and not detained because Ocampo "did not diligently pursue any investigation, much less a means of investigation that was likely to confirm or dispel any suspicions he may have had about Mr. Castillo." Motion at 11:14-16.

Defendants contend that plaintiff's detention was not an "arrest," but rather a valid investigatory stop based on reasonable suspicion. "*Terry [ v. Ohio*, 392 U.S. 1 (1968)] created a limited exception to th[e] general rule" that police detentions require probable cause; under *Terry* "certain seizures are

1 justifiable under the Fourth Amendment if there is articulable suspicion that a person has committed or
2 is about to commit a crime." *Florida v. Royer*, 460 U.S. 491, 498 (1983) (plurality opinion). "Under
3 *Terry* and its progeny, the Fourth Amendment allows police to conduct a brief, investigatory search or
4 seizure, so long as they have a reasonable, articulable suspicion that justifies their actions. The
5 reasonable suspicion standard 'is a less demanding standard than probable cause,' and merely requires
6 'a minimal level of objective justification.'" *Gallegos v. City of Los Angeles*, 308 F.3d 987, 990 (9th Cir.
7 2002) (quoting *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000)).

8 Defendants argue that there are numerous factual disputes relevant to whether plaintiff was
9 arrested versus subject to a *Terry* stop. The Court agrees. The evidence shows that there are disputes
10 about how plaintiff was detained; whether or nor Ocampo used force on plaintiff, including whether
11 Ocampo used force sufficient to injure plaintiff's elbow; whether it was reasonable, in light of the
12 circumstances, for Ocampo to rely on information from the Coliseum security officer that plaintiff was
13 involved in the fight when making the decision to detain plaintiff; whether plaintiff resisted when he
14 was being handcuffed; whether there was a riot-like atmosphere at the time plaintiff was detained[3]; and
15 the length of the detention. If plaintiff's account of the incident is accurate, a jury could conclude that
16 Ocampo unlawfully arrested plaintiff and violated plaintiff's constitutional rights. If a jury believes
17 defendants' account of events, a jury could conclude that Ocampo acted reasonably and that there was
18 no constitutional violation. On this disputed factual record, summary judgment is inappropriate. For
19 the same reasons, the Court also denies summary judgment on the question of whether Ocampo is
20 entitled to qualified immunity. *See Act Up!/Portland v. Bagley*, 988 F.2d 868, 873 (9th Cir. 1993).

21 The parties devote much of the briefing to the specific question of whether Ocampo was entitled
22 to rely on the Coliseum security guard's statement that plaintiff was involved in the fight when Ocampo

---

[3] In his reply, plaintiff asserts that defendants cannot create a question of fact as to whether there was a "riot-like" atmosphere because Ocampo testified that the situation was "somewhat stable" once they got to D Gate, and because an Oakland Police Department photograph (Haddad Ex. I) shows plaintiff and other arrestees sitting handcuffed against a wall while OPD officers are standing around. However, much of the testimony and evidence regarding the "riot-like atmosphere" relates to the situation inside the Coliseum, not at D Gate. Moreover, plaintiff himself testified that after he and the other arrestees were handcuffed and detained outside D Gate, there was still a lot of "commotion, pushing, shoving" (Castillo Depo. at 56:15-16) and that police officers formed a wall between the detainees and the exiting fans because the fans were trying to attack the detained individuals. *Id*. at 67:13-16.

5

decided to detain plaintiff, or whether Ocampo was required to conduct his own independent investigation. The Court finds that this question is also not suitable for summary judgment because whether Ocampo acted reasonably is dependent on the facts. The Ninth Circuit has held that "law enforcement officers are generally entitled to rely on information obtained from fellow law enforcement officers." *Motley v. Parks*, 432 F.3d 1072, 1081 (9th Cir. 2003). Plaintiff emphasizes the language from *Motley* that "[a]ll officers, however, have an ongoing duty to make appropriate inquiries regarding the facts received or to further investigate if insufficient details are relayed." *Id*. Plaintiff notes that Ocampo has testified that he did not know who the security officer was, and that Ocampo himself did not observe plaintiff fighting. However, Ocampo argues that under the chaotic circumstances he faced, it was reasonable for Ocampo to rely on the security officer's statement that plaintiff had been involved in the fight. "The lynchpin is whether the officer's reliance on the information was objectively reasonable." *Id*. at 1082. Whether Ocampo acted reasonably in relying on the security guard's statement that plaintiff was involved in the fight is a question that cannot be resolved on summary judgment.

## II.     Cal. Civil Code § 52.1

California Civil Code § 52.1 provides that "[a]ny individual whose exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of this state, has been interfered with, or attempted to be interfered with . . . may institute and prosecute in his or her own name and on his or her own behalf a civil action for damages." Cal. Civ. Code § 52.1(b). To establish a valid claim under § 52.1(b), a plaintiff must allege a violation of a cognizable constitutional right under the U.S. or California constitutions. *Austin v. Escondido Union Sch. Dist.*, 149 Cal. App. 4th 860, 882 (Cal. Ct. App. 2007). Plaintiff contends that he is entitled to summary judgment on this claim based on defendant Ocampo's false arrest of him. For the reasons stated *supra*, the Court concludes that there are material issues of fact, and thus summary judgment is inappropriate.

6

**CONCLUSION**

For the reasons set forth above, the Court DENIES plaintiff's motion for partial summary judgment. (Docket No. 34).

**IT IS SO ORDERED.**

Dated: October 26, 2010

SUSAN ILLSTON
United States District Judge